IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | No. 11 CR 148-1 |
| v. ) | |
| ) | |
| WILLIAM ALEXANDER ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant William Alexander's Renewed Motion for Production of Government Informant. (R. 204, Mot.) For the reasons discussed below, the Court grants Defendant's motion in part and denies it in part as moot since Defendant knows the identity of the confidential informant.

## BACKGROUND

On March 22, 2011, the grand jury returned a three-count indictment, charging Defendant William Alexander ("Alexander") with conspiring and attempting to knowingly and intentionally possess five or more kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and § 846, and knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (R. 16, Indictment.) Special Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") arrested Alexander and his two co-defendants on February 23, 2011 as part of a sting operation involving a fake stash-house robbery. The stash house at issue was not real and the individuals with whom Defendant agreed to commit the robbery were undercover ATF agents. Alexander intends to raise an entrapment defense in this case, and he argues that the potential testimony of the government's confidential

informant ("CI"), who recruited him to take part in the stash-house robbery, is "relevant and potentially beneficial" to his entrapment defense. (Mot. at 4.) Defendant asserts that the CI's testimony "might be the only way Defendant can support his version of the facts." (*Id*.)

On August 4, 2013, Defendant filed his initial Motion for Informant Discovery. (R. 120.) In that motion, Alexander requested that the Court order the government to reveal the CI's identity and produce the CI so that Alexander can interview him before trial. (*Id*. at 2-4.) Alexander also sought information relating to the CI, including his address, criminal history, promises that the government made to the CI in exchange for his information, and his tax returns from the time he began serving as an informant. (*Id*.) The Court denied Alexander's request, without prejudice, and directed him to "demonstrate the importance of the CI's testimony to his defense through evidence, rather than conclusory and unsworn arguments of counsel." (R. 160, Dec. 5, 2013 Order at 5.)

On January 6, 2014, Alexander submitted to the Court a proffer in support of his anticipated defense of entrapment and asserted that he will testify to the following facts. (R. 180, Proffer.) Alexander, who is small and suffers from physical deformities, states that he came under the protection and influence of the CI, a fellow inmate, while serving time in DuPage County Jail. (*Id.* at 2.) After Alexander and the CI were released from jail, the CI recruited Alexander to participate in the fake stash-house robbery by claiming that Alexander owed him for protecting Alexander in jail. (*Id.*) Alexander refused the CI's suggestion numerous times but ultimately caved to the CI's persuasion. (*Id*. at 3.) Alexander intends to present expert testimony that he could not say "no" to a more powerful figure like the CI. The CI promised Alexander that the robbery offered a large reward (30 kilograms of cocaine at approximately $22,000 per kilogram) with little risk. (R. 210 at 9.) Once Alexander agreed to participate in the

2

robbery, the CI gave Alexander the telephone number of an undercover ATF agent posing as a disgruntled drug courier. (R. 180.) During the planning of the robbery, the CI coached Alexander on what to say to the undercover agent. (*Id*.) Specifically, the CI instructed Alexander to tell the undercover agent that he was experienced at home invasions, was a gang chief, and had ready access to weapons. (*Id*.)

On June 19, 2014, Alexander filed the present renewed motion. (R. 204.) In the renewed motion, Defendant represented that he would submit an *ex parte* and under seal supplement explaining why the CI's testimony was relevant to his entrapment defense. (*Id*. at 4 fn. 4.) Defendant chose not to file that supplement and instead presented his argument in his reply brief. (R. 210, Reply.) In his reply, Alexander asserts that access to the CI is necessary to obtain relevant information regarding the CI's interactions with Defendant, including whether the government directed the CI to initiate contact with Defendant. (*Id*. at 2.) In addition to the production of the CI, Alexander also requests the following information: (i) the CI's criminal history; (ii) the extent of the CI's cooperation with the government (including the number of other "stash house" cases he may have worked on); (iii) the amount of compensation the government has paid him for his work as an informant; and (iv) any other incentives the government offered the CI in exchange for recruiting individuals to participate in stash house robberies. (*Id*.)

## LEGAL STANDARD

The government possesses "a limited privilege to withhold the identity of a confidential informant from a criminal defendant." *United States v. Wilburn,* 581 F.3d 618, 622-23 (7th Cir. 2009) (citing *Roviaro v. United States,* 353 U.S. 53, 59-60, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957)). "The privilege recognizes the obligation of citizens to communicate their knowledge of

the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *United States v. Bender,* 5 F.3d 267, 269 (7th Cir. 1993) (quoting *Roviaro,* 353 U.S. at 59). The privilege, however, is not absolute; it must "give[] way if the defendant proves that the disclosure of the informant's identity 'is relevant and helpful' to his defense 'or is essential to a fair determination of a cause.'" *United States v. Harris,* 531 F.3d 507, 514 (7th Cir. 2008) (quoting *Roviaro,* 353 U.S. at 60-61).

Whether to order disclosure is discretionary, s*ee Bender,* 5 F.3d at 269, and in exercising its discretion, the Court "must balance 'the public interest in protecting the flow of information against the [defendant's] right to prepare his defense.'" *Harris,* 531 F.3d at 514 (quoting *Roviaro*, 353 U.S. at 62). This inquiry necessarily depends "on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" *Id.* "Informants who played major roles in the criminal occurrences will of course offer more significant testimony than those whose participation was peripheral; a showing that a potential defense may depend on the informant's involvement also weighs in favor of disclosure." *United States v. Valles,* 41 F.3d 355, 358 (7th Cir. 1994) (citing *Roviaro,* 353 U.S. at 62).

The defendant bears the burden of demonstrating a "genuine need" of disclosure to overcome the confidential informant privilege. *United States v. Andrus,* 775 F.2d 825, 842 (7th Cir. 1985) (citing *United States v. Tucker,* 552 F.2d 202, 209 (7th Cir. 1977)); *see also Bender,* 5 F.3d at 271 (affirming denial of motion to disclose the identity of a confidential informant because the defendant failed to "show[] a genuine need to have the informant testify"); *Dole v. Local 1942, Int'l Bhd. of Elec. Workers,* 870 F.2d 368, 373 (7th Cir. 1989) (district courts must decide whether the defendant "has credible need for the information in order to defend itself in

4

the action—a need greater than the important policy consideration underlying the privilege"). "The privilege will not yield to permit a mere fishing expedition, . . . nor upon bare speculation that the information may possibly prove useful." *Dole,* 870 F.2d at 373 (citations omitted).

Here, the government refuses to produce the CI for a pre-trial interview or disclose information related to the CI on the basis of the confidential informant privilege. (Govt. Resp. Br. at 5.) The government, however, has represented to the Court that it does not know where the CI is located despite the government's efforts to "find this man through every means possible under frankly the power of the federal government." Despite the title of his motion, it is clear that Defendant knows the identity of the CI and even refers to him by his initials in his proffer. Defendant acknowledges that he previously was incarcerated with Defendant, thus he clearly knows the CI's identity. Because Defendant knows the CI's identity and because the government has lost contact with the CI, the discovery regarding the CI appears to be at the heart of Defendant's motion.

## ANALYSIS

**I.     Entrapment**

Defendant argues that the Court should order disclosure of the information because the CI in this case played a central role in the underlying crime and is integral to his entrapment defense. Defendant has submitted a proffer in support of his entrapment defense. "Entrapment is the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law." *United States v. Plowman*, 700 F.3d 1052, 1057 (7th Cir. 2012) (citations and quotations omitted). "An entrapment defense contains two related elements: (1) government inducement of the crime; and (2) the defendant's lack of predisposition to engage in the crime." *Id.* In order to present an entrapment instruction to a

5

jury, the defendant "must be able to proffer sufficient evidence of both elements." *Id. See also United States v. Pillado*, 656 F.3d 754, 764 (7th Cir. 2011).

The Seventh Circuit considers a number of factors in analyzing the predisposition prong, including: (1) the defendant's background, including prior criminal history; (2) whether government agents or informants first suggested the criminal activity; (3) whether the defendant engaged in the criminal activity for profit; (4) whether the defendant was reluctant to engage in the criminal activity; (5) whether law enforcement officers or their agents merely invited or solicited the defendant to commit the offense; and (6) the defendant's ability to commit the crime without the assistance of law enforcement officers or their agents. *Pillado*, 656 F.3d at 766; Seventh Circuit Pattern Jury Instruction No. 6.05. Viewing these factors, Defendant has provided a basis for a plausible entrapment defense and met his burden for production of the discovery regarding the CI in this case.

First, Defendant admits that he has an extensive criminal history, but he does not have any arrests or convictions for armed robbery, home invasions, or large quantity drug charges. Further, although Defendant may have told the undercover agent that he had done this sort of thing before and that he was a gang leader who controlled seventeen blocks, Defendant asserts that the CI told him to say this to the undercover agent. If the CI corroborates that claim, Alexander's background will be less likely to weigh in favor of predisposition.

Second, Defendant proffered that the stash house robbery was the CI's idea. He asserts that the CI's testimony could bolster his own and that the CI will be able to answer whether the Government told the CI to target the Defendant. The government, in fact, concedes that the government initially suggested the criminal activity. While Defendant may have reached out to

the CI to further discuss the planned robbery, it is uncontested that the CI first suggested it to Defendant.

Third, Defendant said that he engaged in the activity for profit. According to Defendant, the CI told him that there was approximately $600,000 worth of cocaine at the stash house.

Fourth, Defendant proffered that he was reluctant to engage in the scheme but that the CI wore him down. Defendant will also have an expert testify that he could not say no to a powerful figure like the CI.

Fifth, Defendant asserts that the CI solicited and persuaded Alexander to participate in the robbery. He wants to determine if the CI's statements to the government corroborate this factor.

Finally, Defendant asserts that he was not able to secure a gun (despite his recorded boasts to the UC agent that he could get one and that he was a gang leader). The CI offered to help Alexander obtain a handgun. Ultimately, Defendant obtained a handgun that he asserts is roughly 100 years old and held together by duct tape. The government does not contest this fact. The fact that Defendant, who is 5'1" and diminutive, intended to rob a cartel stash house that was manned by at least three armed individuals when Defendant was only armed with a 100 year old handgun lends some support to Defendant's position.

Pattern Instruction 6.05 also identifies two additional factors to consider when engaging in the inducement analysis: (1) the nature and extent of any pressure or persuasion used by law enforcement officers or their agents; and (2) whether law enforcement officers or their agents offered the defendant an ordinary opportunity to commit a crime or instead offered the defendant exceptional profits or persuasion. Here, Defendant asserts that the CI persuaded or guilted him into participating by telling him that he "owed" him for providing protection in jail. He contends

7

that the CI will corroborate this factor. Defendant also asserts that the government presented a situation involving windfall profits.

Balancing all of the relevant factors involving the government informant privilege and especially given the fact that Defendant already knows the identity of the CI and the government does not make any argument that the CI's safety is in jeopardy if Defendant has access to the requested discovery, the Court grants Defendant's motion for production of the withheld discovery pertaining to the CI. Defendant has proffered sufficient evidence to establish a plausible basis for a potential entrapment defense.

The Court realizes that the CI currently is physically unavailable to either party. The Court orders the government to immediately apprise the Court if the government locates the CI.

Finally, this ruling pertains to discovery regarding the CI and discovery regarding the CI's relationship and contacts with Defendant. If Defendant seeks to pursue an entrapment theory at trial, Defendant will have to proffer to the Court in advance of trial how he intends to prove his entrapment defense, especially if the CI is still unavailable to both sides.

ENTERED:

**AMY** J. S**T**. **E**VE
United States District Judge

DATE: October 6, 2014